UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

TARIQ BELT,                        :
                                   :
        Petitioner                 :   No. 4:CV-10-1652
                                   :
    vs.                            :   (Complaint Filed 08/09/10)
                                   :
U.S. DEPT. OF JUSTICE, et al.,     :   (Judge Muir)
                                   :
        Respondents                :

**MEMORANDUM AND ORDER**

December 8, 2010

Tariq Belt, ("Belt"), an inmate confined in the Allenwood Low Security Correctional Institution, White Deer, Pennsylvania, ("LSCI-Allenwood"), filed this pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner claims that his due process rights were violated during the course of a prison disciplinary hearing, where he was found guilty of the prohibited act of Accepting Money or Anything of Value from Another Inmate, or Any Other Person without Staff Authorization, a violation of Disciplinary Code Section 328. Specifically, he claims that the Discipline Hearing Officer ("DHO") disregarded proper procedures at his DHO hearing; the record relied on by the DHO was falsified;

and that he is being retaliated against. (Doc. 1, petition). Thus, petitioner files the instant action in which he seeks to have the incident report expunged. Id. The petition is ripe for disposition and, for the reasons that follow, will be denied.

**Background**

On May 10, 2010, at approximately 3:00 p.m., Belt was issued Incident Report 2009341 charging him with Conduct Which Disrupts or Interferes with the Security or Orderly Running of a BOP Facility, and Giving or Receiving Money or Anything of Value from Another Inmate Without Staff Authorization, violations of code 399 and code 328. (Doc. 14, Ex. 1, Att. C, Incident Report). A copy of the incident report was delivered to Belt on May 10, 2010, at approximately 8:15 p.m. Id. The incident report, which was written by Special Investigative Technician J. Berkihise, reads as follows:

> On April 28, 2010, it was discovered that inmate Tariq Belt, #40945-037, placed on his contact list; Joseph Bunker, 4115 Gray St., Detroit, MI 48205, and P.O. Box 380454, Clinton Township, MI, 48038, and joe.bunker@yahoo.com between the dates of March 18, 2010 and April 7, 2010, Joseph Bunker was identified as inmate Peter Joseph Messina, # 25451-039. After further review

>     of financial and email data it was found that
>     Messina sent inmate Belt $50 under the alias
>     Joe Bunker.  From March 20, 2010 to April 4,
>     2010, inmate Belt was in contact with Messina
>     through the TRULINCS email system.  It should
>     be noted that from January 20, 2010 to April
>     1, 2010, Messina was assigned to the halfway
>     house and under BOP supervision.

Id.  On May 12, 2010, petitioner appeared before the Unit Discipline Committee ("UDC").  (Doc. 1, Ex. 1, Att. C, Committee Action).  The UDC referred the charge to the Discipline Hearing Officer ("DHO"), with a recommendation that, if the DHO found Belt to be guilty, then sanctions including 13 days loss of good conduct time and 3 months loss of telephone privileges be imposed.  During the UDC hearing, Belt was informed of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form.  (Doc. 14, Ex. 1, Att. C, Inmate Rights at Discipline Hearing form).  Belt refused to sign the form Id.

On May 12, 2009, Belt was provided with a "Notice of Discipline Hearing before the (DHO)" form. (Doc. 14, Ex. 1, Att. C, Notice of Discipline Hearing Before the DHO).  Belt waived his rights to have a staff member represent him at the hearing and to have witnesses testify on his behalf.  Id.

On May 20, 2010, Petitioner appeared for a hearing before DHO, Todd W. Cerney. (Doc. 14, Ex. 1, Att. C, DHO Report). During the May 20, 2010 DHO hearing, the DHO again read and reviewed the inmate's due process rights with Belt, and Belt indicated that he understood them. Id. The DHO confirmed that Belt received a copy of the incident report, that he did not want to call any witnesses, and that he did not want a staff representative. Id. During the hearing, petitioner stated "'[i]f that money was from March 30th, I guess it was up for interpretation. I didn't know that anyone was in a half-way house.'"

The documentary evidence which the DHO considered in making his determination included: (1) April 29, and May 10, 2010 memoranda from reporting officer Jason M. Berkihise; (2) SENTRY Inmate History report for Messina # 25451-039, dated April 29, 2010; (3) photocopy of letter addressed to L.V. Leonnard, Arnold, MD 2102, dated April 19, 2010; (4) Trulincs Inmate Contact Report for BELT #40945-037; (5) Truview Inmate Center report for BELT #40945-037; and (6) Trulincs e-mails for BELT #40945-037 from 3/30/10 thru 3/31/10. Id.

4

The specific evidence taken from the relied upon documentary evidence was as follows:

> During this discipline hearing regarding BELT, Tariq, Register No. 40945-037, for the charges of Conduct Which Disrupts or Interferes with the Security or Orderly Running of an Institution of the Bureau of Prisons and Giving Money or Anything of Value to, or Accepting Money or Anything of Value from; Another Inmate, or Any Other Person Without Staff Authorization, Codes 399 and 328, the following information was evidentiary and documented by the DHO in his findings.
>
> BELT's involvement in the incident, as noted in Section 11 of Incident Report 2009341, as provided by J. Berkihise, Special Investigative Technician, was reviewed. Paraphrased, J. Berkihise, writes: On April 28, 2010, it was discovered that inmate Tariq BELT, #40945-037, placed on his contact list; Joseph Bunker, 4115 Gray St., Detroit, MI 48205, and P.O. Box 380454, Clinton Township, MI, 48038, and joe.bunker@yahoo.com between the dates of March 18, 2010 and April 7, 2010. Joseph Bunker was identified as inmate Peter Joseph Messina, # 25451-039. After further review of financial and email data it was found that Messina sent inmate Belt $50 under the alias Joe Bunker. From March 20, 2010 to April 4, 2010, inmate Belt was in contact with Messina through the TRULINCS email system. It should be noted that from January 20, 2010 to April 1, 2010, Messina was assigned to the halfway house and under BOP supervision.
>
> An inmate history on Messina #25451-039,

5

showed him in a Release and Re-entry Center from January 20, 2010 through April 2, 2010. A memorandum dated May 10, 2010, from Jason M. Berkihiser, showed a Truview Inmate Center Report from April 29, 2010, showing BELT receiving $50.00 from "Joe Bunker". A letter written by BELT to L.V. Leonnard, cited "Mr. Messina" receiving mail at P.O. Box 380464. A Trulincs inmate contact form for BELT showed "Joseph Bunker" as a friend with a mailing address of P.O. Box 380464. A Truview center report for BELT showed Bunker providing BELT $50.00 on March 30, 2010. An E-mail from "Joseph Bunker" asked BELT if he got the "gift" sent to him. This e-mail was from March 30, 2010. BELT's e-mail response to Bunker cited the subject: regarding $50.00.

Upon questioning by the DHO, BELT neither admitted nor denied the charges. He elaborated upon his plea by stating, "If that money was from March 30th, I guess it was up for interpretation. I didn't know that anyone was in a half-way house." The DHO recognized Messina aka Joseph Bunker residing at a Release and Re-entry Center on March 30, 2010; the same date that this individual sent BELT $50.00. Messina/Bunker was not out from under Federal of Bureau of Prisons custody at this time. With this, BELT was unauthorized to receive money from this inmate. BELT's claim of not knowing "anyone" was in a half-way house was not believed. If Messina (Joe Bunker) and BELT were personally close enough for the former to send the latter money, the DHO believed BELT aware of the individual's living arrangements.

After the consideration of evidence listed in Sections III and V of this report and

6

>documented above, the DHO has drawn the
>conclusion the greater weight of the evidence
>listed in paragraphs two through four above,
>supports the finding BELT, Tariq, Register
>No. 40945-037, committed the prohibited act
>of Accepting Money or Anything of Value from;
>Another Inmate, or Any Other Person Without
>Staff Authorization, Code 328[1], on 4/29/10,
>at or about 1:00 PM, Trulincs System, LSCI-
>Allenwood, PA.

Id. The DHO sanctioned Petitioner to disallowance of thirteen (13) days good conduct time and a three (3) month loss of visiting and commissary privileges. Id. The DHO documented his reasons for the sanctions given as follows:

>BELT's receipt of money from an individual in
>a Release and Reentry Center threatened the
>orderly running of this institution.
>Monetary fund transfers between inmates is
>not authorized. Accordingly, disallowed good
>conduct time is sanctioned in an effort to
>punish BELT for his behavior, while loss of
>commissary and telephone privileges will
>hopefully, deter him from this activity in
>the future.

Id. White was advised of his appeal rights at the conclusion of the hearing. Id.

**Discussion**

---

[1]The Code 399 charge, Conduct which Disrupts or Interferes with the Security or orderly running of a BOP facility was dismissed.

7

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. Torres v. Fauver, 292 F.3d 141 (3d Cir.2002). It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. Id. Since Petitioner's sanctions did include the loss of good conduct time, Petitioner has identified a liberty interest in this matter.

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance

8

from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. Wolff, 418 U.S. at 563-67. The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445-46 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir.1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. Hill, 472 U.S. at 457.

The Bureau of Prisons' inmate disciplinary procedures are codified at 28 C.F.R. § 541, et seq., and entitled, Inmate Discipline and Special Housing Units. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. See Von Kahl v. Brennan, 855 F.Supp. 1413, 1418 (M.D.Pa.1994). Pursuant to these regulations, staff shall prepare an Incident Report when there is reasonable belief that a violation of BOP

9

regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful.  28 C.F.R. § 541.14.  The incident is then referred to the UDC for an initial hearing pursuant to § 541.15.  The UDC hearing is "ordinarily held within three work days from the time staff became aware of the inmate's involvement in the incident" and does not include the initial day staff learns of the incident, weekends or holidays.  See 28 C.F.R. § 541.15(b).  This period may be extended for good cause shown by either the inmate or staff.  See 28 C.F.R. § 541.15 (k).  If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions.  If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a disciplinary hearing officer for a hearing.  28 C.F.R. § 541.15.  "The DHO shall give the inmate a written copy of the decisions and disposition, ordinarily within 10 days of the DHO's decision."  28 C.F.R. § 541.17(g).

In the instant case it is clear that Belt was afforded all of the required procedural rights set forth in Wolff.  He

received timely notice of the incident report. He was properly informed of his rights before the hearing, as well as given the opportunity to make his own statement, present documentary evidence, have a staff representative, and to present witnesses on his behalf. Petitioner chose only to make a statement, which was documented in the DHO's report. Petitioner also received a written decision setting forth the evidence relied upon by the DHO and the rationale behind the decision. Petitioner was then notified of his right to appeal.

To the extent Belt claims that the BOP failed to comply with the requirements of 28 C.F.R. §§ 541.12-541.23, his claim lacks merit. Belt alleges that the BOP violated his due process rights by failing to comply with the regulations for "rewriting, nor for extensions or delay" of his hearings without notice. (Doc. 1, petition). Belt does not clearly indicate which section he is referring to or how the BOP failed to comply with a section pertinent to his DHO or UDC hearing. While the regulations referenced by Belt do set forth the structure and guidance for prison disciplinary procedures, an inmate's due process rights at a DHO hearing

11

are guided by Wolff. As set forth above, Belt received all due process rights in the preparation for and conducting of his DHO hearing.

Since Belt was afforded all of his procedural rights, the only remaining issue is whether there was sufficient evidence to support the decision by the DHO. The record clearly reveals the existence of specific documentary evidence submitted at the hearing to allow the DHO to conclude that the greater weight of the evidence supported a finding of guilt. Specifically, the DHO relied upon (1) April 29, and May 10, 2010 memoranda from reporting officer Jason M. Berkihiser; (2) SENTRY Inmate History report Messina # 25451-039, dated April 29, 2010; (3) photocopy of letter addressed to L.V. Leonnard, Arnold, MD 2102, dated April 19, 2010; (4) Trulincs Inmate Contact Report for BELT #40945-037; (5) Truview Inmate Center report for BELT #40945-037; and (6) Trulincs e-mails for BELT #40945-037 from 3/30/10 thru 3/31/10. Based on the foregoing, the Court concludes that the evidence before the DHO was sufficient to support the outcome of the hearing and meets the requirements imposed by the Due Process Clause.

12

Moreover, the Court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. § 541.13. Petitioner was found guilty of a 300-level, moderate severity prohibited act. Pursuant to 28 C.F.R. § 541.13, the following are some of the sanctions available for 300 level offenses:

> B.1. Disallow ordinarily up to 25% (1-14) days of good conduct time available for a year (a good conduct time sanction may not be suspended); and
>
> G. Loss of privileges: commissary, movies, recreation, etc.

28 C.F.R. § 541.13 (Tables 3 and 4). Thus, the sanctions imposed by the DHO in the present case were consistent with the severity level of the prohibited act and within the maximum available to the DHO.

Finally, to the extent that Belt alleges that "the staff members authoring the incident report did so out of retaliation for use of administrative remedies. . .", (Doc. 1, petition), it is well settled that federal habeas corpus relief is limited to inquiries into the "legality of detention". Leamer v. Fauver, 288 F.3d 532, 540 (3d Cir. 2002); Preiser v. Rodriguez, 411 U.S. 475 (1973). Federal

13

habeas relief is unavailable unless the petition attacks the "validity of the continued conviction or the fact or length of the sentence." Id. at 542. To the extent Belt is challenging the conditions of his confinement in violation of the constitution, his retaliation claim is not properly raised in a habeas petition.  Accordingly, the petition will be denied. An appropriate Order accompanies this Memorandum Opinion.

s/Malcolm Muir<br>
MUIR<br>
United States District Judge

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

TARIQ BELT, :
:
      Petitioner : No. 4:CV-10-1652
:
  vs. : (Complaint Filed 08/09/10)
:
U.S. DEPT. OF JUSTICE, et al., : (Judge Muir)
:
      Respondents :

**ORDER**

December 8, 2010

For the reasons set forth in the accompanying Memorandum, **IT IS HEREBY ORDERED THAT:**

1. The petition for writ of habeas corpus (Doc. 1) is **DENIED**.

2. Petitioner's motion "renewing request for preliminary relief" (Doc. 10), "standing motion for extension of time" (Doc. 11), and motion FO Reconsideration of this Court's Order denying petitioner's motion to stay (Doc. 13) are **DENIED**.

3. The Clerk of Court is directed to **CLOSE** this case.

                            s/Malcolm Muir
                            MUIR
                            United States District Judge